UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:20-CV-00239-MOC-DCK

| | |
|---|---|
| JAMES MCDONALD BROWN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| TRUST BANK, SUCCESSOR BY MERGER ) | |
| WITH SUNTRUST BANK, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's motion to dismiss Plaintiff's *pro se* Complaint, brought pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 42. For reasons set forth below, Defendant's motion to dismiss is granted.

**I. BACKGROUND**

This diversity action stems from a Last Will and Testament (the "Will"), which was executed by Stella Jean Brown, Plaintiff's aunt. On October 2, 2019, Plaintiff—a Will beneficiary—filed a *pro se* Complaint against Defendant—the Will executor—in the United States District Court for the District of South Carolina, essentially alleging: (1) it failed to fulfill its contractually obligated duty as executor of Ms. Brown's Will by not presenting the Will to probate and failing to act as executor, and (2) it failed to prevent the fraud allegedly committed by Mr. Weaver. See Doc. No. 1-1. The following facts are taken from that Complaint and construed in the light most favorable to Plaintiff. See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted).

1

On January 14, 1954, Ms. Brown executed her Will at the National Savings and Trust Company in Washington, D.C.[1] Doc. No. 1-1 at 1. An official receipt from the Will acknowledges that National Savings would keep the Will safely in its vault and serve as executor of the estate. Id. In 1972, Ms. Brown moved from Washington, D.C. to Knoxville, Tennessee. Id. In 1978, a court declared her incompetent and thus appointed a conservator to manage her estate. Id.

Sometime before Ms. Brown's death, Plaintiff "asked the bank to search the will vault for her will" but bank employees were unable to find the Will at the time. Id. at 1–2. Ms. Brown passed away on November 1, 2011. Id. Thereafter, in July 2013, Plaintiff was informed through a phone call from his half-sister, Kim Sides, that Ms. Brown had executed a will, and that her estate was worth more than $800,000. Id. at 2. In his Complaint, Plaintiff asserts that "[t]his was the first time [he] was [made] aware that [his] aunt, [Ms.] Brown, had made a will." Id.

After learning about Ms. Brown's sizable estate, Plaintiff traveled to Knoxville to involve himself in the probate proceedings. Id. After acquiring counsel, Plaintiff obtained the annual reports prepared by Ms. Brown's conservators on May 14, 2014. Plaintiff reviewed those documents over the next five days, ultimately discovering that Ms. Brown's first conservator committed fraud against her in 1984, diminishing her checking account by $11,193.25. Id. Thereafter, Plaintiff hired a Knoxville Certified Public Accountant to review the reports, who agreed that Ms. Brown was defrauded and who found that the funds would be worth over $150,000. Id.

---

[1] A predecessor of Defendant Truist Bank.

At some point along the way, SunTrust Bank[2] acquired National Savings. Plaintiff and his attorney continued to inquire about the Will with SunTrust. Id. In July 2014, Plaintiff obtained a copy of "the Record of Testamentary Papers" from another source, which provided the bank had been paid to protect the Will and serve as its executor. Nevertheless, the SunTrust attorney and vice president continued to maintain they were never given the original will. Id. at 3. Before the Tennessee probate court, SunTrust and its employees asserted the same. Id.

In May 2015, Plaintiff lost his case in the probate court and Ms. Brown was declared intestate. Later, he emailed and called General Counsel for SunTrust to again ask for help locating the Will. Id. Within a matter of days, Lee Stephenson, a SunTrust attorney and vice president, called and told him "she was holding [Ms.] Brown's original will in her hands." Id. Plaintiff inquired how and where the Will was located, but Stephenson told him that "her legal department had advised her 'to be of no further service to [him].'" Id. The Will shows Defendant was named the executor of Ms. Brown's Will, and that Plaintiff, as heir of Ms. Brown's brother, is a beneficiary of her Will. See Doc. No. 43-1.

Plaintiff asserts that Suntrust "then assumed their responsibility as executor of [Ms.] Brown's estate." Doc. No. 1-1 at 4. Even so, they nevertheless refused to pursue the fraud by the Conservator. "Their failure resulted in at least a $150,000 loss to the estate" and required Plaintiff to expend "more than $175,000" in "attorney's fees alone" to attempt to recover from that fraud. Id. Plaintiff has also expended funds on "court costs, fees, costs of transcripts and documents, and traveling and lodging related to more than 65 days traveling more than 20,000 miles." Id. Plaintiff seeks in excess of $200,000 in damages. Id. at 4-5.

---

[2] Defendant Truist Bank is the successor by merger of SunTrust Bank.

Finally, Plaintiff alleges that Suntrust employees have all acted to "limit their liability for losing the original will." Id. Plaintiff alleges that Defendant has made no explanation as to how or why the original Will was lost, and asks "Shouldn't fraudulent concealment of the facts related to the concealment of the Will toll any statute of limitations?" Doc. No. 45 at 9. Plaintiff argues that "there is no doubt at all the original Will was quite improperly concealed from probate until August 4, 2015." Id. In response to Defendant's allegation that Plaintiff had "actual notice" the original Will was missing in 2011, Plaintiff asks "How could I have possibly known the original Will was missing, when the bank continued to deny it had every been given the original will? … I had no certain knowledge that the bank had been concealing the Will until…the bank's archives had finally located the original Will in early June 2015." Id. at 16-17. Plaintiff states "My cause of action became evident when the bank finally admitted the Will had been located in bank archives." Id. at 17.

Plaintiff claimed that he knew the Tennessee statute of limitations for filing a suit against the fiduciaries of a person under a disability was three years from their death, but believes that he had been improperly denied access to Ms. Brown's annual conservator reports until May 14, 2014. Id. at 14. Plaintiff argues that these facts should "allow that statute of limitations to be tolled due to fraudulent concealment," which would, by his calculations, give him "until May 14, 2017 to file a suit against Chancellor Weaver for the fraud against my aunt." Id. at 14-15. However, Plaintiff has already pursued the claim against Weaver in state court, and the state court dismissed Plaintiff's lawsuit based on statute of limitations. See Brown v. Weaver, No. E2018-0083-COA-R3-CV, 2018 WL 6706285 (Tenn. Ct. App. December 19, 2018) (perm app. denied, Tenn. S.C. April 11, 2019). Plaintiff appealed, and the Tennessee Court of Appeals

4

likewise denied Plaintiff's claims. Id. Plaintiff appealed again to the Tennessee Supreme Court, and the Tennessee Supreme Court declined to review. Id.

On October 2, 2019 Plaintiff filed a Complaint in the United States District Court for the District of South Carolina. Doc. No. 1. On May 18, 2020 Defendant filed a motion to dismiss, along with a memorandum in support of the motion. Doc. Nos. 42, 43. On June 1, 2020 Plaintiff submitted a brief in response to Plaintiff's motion to dismiss. Doc. No. 45.

## II. DISCUSSION

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. See In re Birmingham, 846 F.3d 88, 92 (4th Cir.), as amended (Jan. 20, 2017). To survive such a motion, a complaint must contain sufficient factual allegations "to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." Vitol, S.A. v. Primerose Shipping Co., 708 F.3d 527, 543 (4th Cir. 2013) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

When ruling on a motion to dismiss, the Court considers "the complaint in its entirety, as well as documents attached or incorporated into the complaint." E.I. du Pont de Nemours, 637 F.3d at 448 (citation omitted). The Court "must accept as true all of the factual allegations contained in the complaint" and draw "all reasonable inferences" in favor of the non-movant. Id. Even so, factual allegations are insufficient if they rely on "naked assertions" and "unadorned conclusory allegations" that are "devoid of factual enhancement." In re Birmingham, 846 F.3d at 92. The Court "is not obliged to assume the veracity of the legal conclusions drawn from the facts alleged." Id.

Additionally, Plaintiff is a *pro se* litigant without representation. Pleadings made by pro se litigants are held to "less stringent standards" than those with representation, and pleadings

5

filed by pro se litigants are "to be liberally construed." See Haines v. Kerner, 404 U.S. 519, 520 (1972); see Erickson v. Pardus, 554 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1972)). Where the context makes clear a litigant's essential grievance, "the complainant's additional invocation of general legal principles need not deter the district court from resolving that which the litigant himself has shown to be his real concern." Sinclair v. Mobile 360, Inc., 417 Fed. Appx. 235, 243 (4th Cir. 2011) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985)).

### A. Choice of Law

Plaintiff has essentially claimed that Defendant: (1) failed to fulfill its contractually obligated duty as executor of Ms. Brown's Will by not presenting the Will to probate and failing to act as executor, and (2) failed to prevent the fraud allegedly committed by Mr. Weaver. See Doc. No. 1-1. Defendant has characterized Plaintiff's claims as "basically alleging a 'failure of contracted fiduciary promises' for Defendant's inability to timely locate the original Will in 2011." Doc. No. 43 at 3.

First, this Court must determine what law to apply to the instant case. Under the Erie Doctrine, when a court is sitting in diversity and the difference in procedure between state law and federal law is "outcome determinative," the court should apply the state's substantive laws. See Erie R.R. v. Tompkins, 304 U.S. 64 (1938); see also Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). State statutes of limitations are considered substantive law, and therefore "if 'the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery.'" Bonham v. Weinraub, 413 Fed. App'x 615, 616 (4th Cir. 2011) (citing Guaranty Trust Co. v. York, 326 U.S. 99, 110 (1945)). Additionally, "state tolling provisions are

6

effectively substantive for Erie purposes." Rowland v. Patterson, 882 F.2d 97, 99 (4th Cir. 1989) (citing Walker v. Armco Steel Corp., 446 U.S. 740, 750-51 (1980)) (emphasis in original).

As noted by Defendant, "The underlying will contest, probate of the Will, and Plaintiff's related litigation were all governed and decided under Tennessee law." Doc. No. 43 at 5. For those reasons and because statutes of limitation and tolling provisions are effectively substantive, the Court applies Tennessee law to the instant case.

For choice of law questions involving contracts, Tennessee follows the rule of *lex loci contractus*. Ohio Cas. Ins. Co. v. Travelers Indem. Co., 493 S.W.2d 465, 467 (Tenn. 1973). This rule provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed absent a contrary intent. Id. If a contract was indeed formed between Ms. Brown and a predecessor of Defendant, then that contract was negotiated and formed in Washington D.C. Therefore, Washington D.C. contract law applies to any claim for alleged breach of contract.

For choice of law questions involving tort claims such as breach of fiduciary duty, Tennessee follows the "most significant relationship" approach of the Restatement (Second) of Conflicts of Laws. Hataway v. McKinley, 830 S.W.2d 53, 59 (Tenn. 1992). Under this approach, the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation. Id. Because the injury stemming from the fraud allegedly committed by Mr. Weaver occurred in Tennessee and no other state has a more significant relationship to the litigation, Tennessee law applies to any breach of fiduciary duty claim.

### B. Breach of Contract

Whether a claim is barred by an applicable statute of limitations is a question of law, and thus a question for the Court. Brown v. Erachem Comilog, Inc., 231 S.W.3d 918, 921 (Tenn.

7

2007); Owens v. Truckstops of Am., 915 S.W.2d 420, 424 (Tenn. 1996). Plaintiff's Complaint mentions the word "contract" several times in describing what he alleges was Defendant's obligation to Ms. Brown. Plaintiff did not attach any documents to his Complaint in support of his claim that a contract existed, nor did he allege how he would have standing to assert such a claim.

But assuming that a contract did exist between Ms. Brown and Defendant and that Plaintiff has standing to bring such a claim, Plaintiff's breach of contract claim that Defendant failed to timely locate the Will and serve as executor is time-barred. Under Washington D.C. law, a cause of action involving a simple contract, express or implied, must be brought within three years of when the action accrued. D.C. Code Ann. § 12-301(7).

Plaintiff admits that he knew the Will was lost prior to Ms. Brown's death in 2011. Plaintiff asserts that he visited the bank in Washington D.C. before Ms. Brown died and requested a copy of the Will. In short, Plaintiff was aware that Defendant was unable to produce the Will before, and certainly as of, Ms. Brown's death on November 1, 2011. In July of 2013, Plaintiff again became aware of the missing Will upon a telephone call from Ms. Sides. In August of 2013, Plaintiff appeared in court in Knoxville, Tennessee to ask to retain legal counsel regarding Ms. Brown's estate. At the absolutelatest, Plaintiff knew that Defendant had lost the Will in June of 2015 when Defendant called Plaintiff to let them know they had located Ms. Brown's will. Therefore, it is likely that the statute of limitations began running in 2011 and at the latest in 2015. Plaintiff brought the instant case in 2019—eight years at the longest or four years at the shortest after the limitations clock began running. Because the statute of limitations is three years, this claim is time-barred.

8

Moreover, neither equitable tolling nor fraudulent concealment apply to this claim. In Washington D.C., equitable tolling is a very limited doctrine. See Sayyad v. Fawzi, 674 A.2d 905, 906 (D.C. 1996). It permits a plaintiff to avoid the bar of the statute of limitations if, in despite of all due diligence, the plaintiff cannot obtain vital information supporting the claim. See East v. Graphic Arts Indus. Joint Pension Trust, 718 A.2d 153, 160 n.21 (D.C. 1998). Once the plaintiff gains, or by due diligence could obtain, the information necessary to file suit, the plaintiff must do so within a "reasonable" time, which is unlikely to extend to the full limitations period. Id. at 161. Here, Plaintiff, through the exercise of due diligence, was able to discover that the Will was missing and that Defendant was the intended executor. Plaintiff received additional confirmation of his discoveries when Defendant notified him that the Will had been found. Clearly, Plaintiff was able to obtain vital information supporting his claim within the established limitations period. As such, equitable tolling does not apply.

To prove fraudulent concealment in Washington D.C., a plaintiff "must show (1) that defendants engaged in a course of conduct designed to conceal evidence of the alleged wrongdoing and that (2) [the plaintiffs] were not on actual or constructive notice of that evidence, despite (3) their exercise of diligence." Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996)(internal citations omitted). Here, the Court is disturbed both by Defendant's inability to find the Will for such a long period of time and by Defendant's unwillingness to explain to Plaintiff where and how they ultimately located the Will. The Court is further unsettled by Defendant's repeated assertions that they never had the original Will. However, the three elements of fraudulent concealment are not satisfied because Plaintiff, through the exercise of due diligence, was on actual or constructive notice of evidence that the Will was lost and that Defendant was not serving as executor of the Will as promised.

9

In sum, Plaintiffs claim for breach of contract is time-barred and is not saved by either the doctrine of equitable tolling or fraudulent concealment.

### C. Breach of Fiduciary Duty for Failing to Timely Locate Will and Act as Executor

To recover for a breach of fiduciary duty claim, Plaintiff must sufficiently plead 1) a fiduciary relationship, 2) breach of the resulting fiduciary duty, and 3) injury to plaintiff or benefit to defendant because of said breach. Ann Taylor Realtors, Inc. v. Sporup, No. W2010-00188-COA-R3-CV, 2010 WL 4939967, at *3 (Tenn. Ct. App. Dec. 3, 2010). Thus, Plaintiff's claim of breach of fiduciary duty sounds in tort. Cartwright v. Cartwright, No. W2016-01423-COA-R3-CV, 2018 WL 3814632 (Tenn. Ct. App. Aug. 10, 2018) (citing Mike v. Po Grp., Inc., 937 S.W.2d 790, 795 (Tenn. 1996)).

A cause of action in tort exists when "two elements ... coalesce: (1) a breach of some legally recognized duty owed by the defendant to the plaintiff and (2) some legally cognizable damage caused to the plaintiff by the breach of duty." Potts v. Celotex Corp., 796 S.W.2d 678, 681 (Tenn. 1990). The statute of limitations for claims based in tort is 3 years "from the accruing of the cause of action." Tenn. Code Ann. § 28-3-105 (2017). Here, Plaintiff is basically alleging a "failure of contracted fiduciary promises" for SunTrust's inability to timely locate the original Will in 2011. See Doc. No. 3 at 1.

To the extent that Plaintiff has pleaded a cause of action for breach of fiduciary duty, and taking the allegations in Plaintiff's Complaint as true, Plaintiff was aware in November of 2011 that the original Will was not to be found. Doc. No. 1-1 at 1. As a direct result, Plaintiff alleges he was forced to expend funds for attorney fees and travel expenses beginning in 2011, thus incurring an injury or damages. Id. at 4. Plaintiff certainly knew or reasonably should have

10

known by the date of the filings in the probate proceedings that Defendant had failed to timely locate Ms. Brown's Will.

Plaintiff was aware that Defendant had not produced the Will as of July 2013 and appeared in court to investigate Ms. Brown's estate in August 2013. According to his Complaint, Plaintiff obtained a copy of the "Record of Testamentary Papers," which Plaintiff alleges proved that Defendant had been charged with holding and protecting the original Will for Ms. Brown. See id. at 2. Then, in February of 2015, Plaintiff admits he had e-mail evidence from a Suntrust vice president, and deposition testimony of a Suntrust employee in charge of the will vault, that contradicted his proof as they alleged that Defendant only had a copy of the Will. Id. at 3. The Probate Court decided the will contest between Sides, Plaintiff, and the intestate heirs in May of 2015, holding that there was no will and the estate was intestate. According to the Complaint, Defendant subsequently discovered and delivered the Will in June of 2015. Id. at 4.

Plaintiff filed this lawsuit on October 2, 2019, more than eight years after his breach of fiduciary duty cause of action likely accrued in 2011. Even if the claim did not accrue in 2011, he knew or reasonably should have known facts supporting his cause of action in July 2013, August 2013, July 2014, February 2015, and May/June of 2015. Therefore, assuming, arguendo, that Defendant owed some legally recognized duty to Plaintiff, he was aware or should have first been aware of the breach of that duty eight years ago, and at the latest in May/June of 2015, four years before his claim in this case. Because the statute of limitations is three years for breach of contract claims in Washington D.C., this claim is time barred.

### D. Breach of Fiduciary Duty for Failing to Prevent Fraud Committed by Conservator

11

Because Plaintiff's breach of fiduciary duty claim for failure to prevent fraud is identical to the claim brought by Plaintiff in state court, this Court finds the claim barred by collateral estoppel. Collateral estoppel, often referred to as issue preclusion, promotes judicial efficiency and fairness. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979). The question of whether collateral estoppel applies is a question of law. Morris v. Esmark Apparel, 832 S.W.2d 563, 566 (Tenn. Ct. App. 1991). The party invoking collateral estoppel bears the burden of proof. State v. Scarbrough, 181 S.W.3d 650, 655 (Tenn. 2005). To succeed on its collateral estoppel claim, Defendant must show:

> (1) that the issue to be precluded is identical to an issue decided in an earlier proceeding, (2) that the issue to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding, (3) that the judgment in the earlier proceeding has become final, (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding, and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

Mullins v. State, 294 S.W.2d 529, 535 (Tenn. 2009). In order to determine whether Defendant has sufficiently pled facts that prove Plaintiff's second claim is barred by equitable estoppel, a review of the the prior litigation on this issue is necessary.

On May 10, 2017, Plaintiff sued Mr. Weaver in Tennessee state court for allegedly committing fraud when Mr. Weaver served as Ms. Brown's conservator. See Brown v. Weaver, 2018 WL 6706285, at *1. On December 29, 2017, Mr. Weaver filed a motion to dismiss, and the trial court granted the motion. Id. at *2. Plaintiff appealed, and the court of appeals ruled that 28-1-106 was the controlling statute of limitations for the claim. Id. at *3. The court determined that Plaintiff had not "allege[d] any facts in his complaint that indicate he could not have timely discovered [Mr. Weaver's] actions through the exercise of reasonable care and diligence." Id. at *6. The documents necessary to make Plaintiff aware of the cause of action were all public

12

recordand "were readily discovered following a single examination of the conservatorship file." Id. The court affirmed the trial court's dismissal, concluding that "having failed to set forth sufficient allegations to support a finding of fraudulent concealment or that in the exercise of reasonable care and diligence that he could not have known of [Mr. Weaver's] alleged wrongful acts, dismissal of [Plaintiff's] complaint is appropriate." Id.

The issue in Brown v. Weaver was alleged fraud by Ms. Brown's conservator Mr. Weaver, and is factually identical to the Plaintiff's claim in the instant case that Defendant failed to fulfill its fiduciary duty by preventing the fraud allegedly committed by Mr. Weaver. See Brown, 2018 WL 6706285, at *1. For an issue to be "actually raised, litigated, and decided on the merits" it must generally be "properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding." Mullins, 294 S.W.2d at 536. In Brown, Plaintiff pled the issue in question, and a dismissal is sufficient for the issue to be "decided on the merits" and for the judgment in Brown to "become final." See Tenn. R. Civ. P. Rule 41.02(3); see also Goeke v. Woods, 777 S.W.2d 347, 349 (Tenn. 1989). Plaintiff in the instant case is the same plaintiff in Brown, and therefore the fourth requirement is satisfied. In order for Plaintiff to have had a "full and fair opportunity" to litigate the issue, Tennessee requires that this Court consider: "(1) the procedural and substantive limitations placed on the plaintiff in the first proceeding, (2) the plaintiff's incentive to litigate the claim fully in the first proceeding, and (3) the parties' expectation of further litigation following the conclusion of the first proceeding." Mullins, 294 S.W.2d at 538–39. Plaintiff had full incentive to litigate the claim fully, but the statute of limitations prevented him from proceeding. The record is silent as to the parties' expectation of further litigation. Because all five criteria for collateral estoppel have been satisfied, this claim is collaterally estopped.

13

### E. Breach of Fiduciary Duty and Tolling Doctrines

Finally, this Court holds that neither claim for breach of fiduciary duty qualifies for tolling. Tolling doctrines can "suspend or extend the running of the limitations period." Story v. Bunstine, 538 S.W.3d 455, 465 (Tenn. 2017) (citing Redwing v. Catholic Bishop for Diocese of Memphis, 363 S.W.3d 436, 459 (Tenn. 2012)). As previously noted, this Court applies state law on substantive issues such as tolling doctrines. See Rowland, 882 F.2d at 99. In civil proceedings, the Tennessee Supreme Court has recognized the doctrines of equitable estoppel and fraudulent concealment but has declined to recognize the doctrine of equitable tolling in civil cases. Redwing, 363 S.W.3d at 460.

Equitable estoppel comes from the maxim that "no person may take advantage of his or her own wrong." Id. For practical purposes, equitable estoppel tolls the statute of limitations "when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." Id. The party invoking equitable estoppel bears the burden of proof. Id. Therefore, Plaintiff must have alleged facts sufficient, when read in the light most favorable to Plaintiff, that support tolling of the statute under the doctrine of equitable estoppel. Plaintiff must show that Defendant induced him to "put off" filing his suit by pleading "specific promises, inducements, suggestions, representations, assurances, or other similar conduct by the defendant that the defendant knew, or reasonably should have known, would induce the plaintiff to delay filing suit." Id. Essentially, equitable estoppel "applies only when the defendant engages in misconduct" and "always involves allegations that the defendant misled the plaintiff." Id. at 460-61. Plaintiff must also demonstrate that his delay in filing suit "was not attributable to [his] own lack of diligence." Id. at 460 (citing Hardcastle v. Harris, 170 S.W.3d 67, 85 (Tenn. Ct. App.

14

2004)). Tolling under equitable estoppel ends when "plaintiffs knows or should know that the defendant has misled him." Id. at 461.

The statute of limitations is tolled under the fraudulent concealment doctrine when "'the defendant has taken steps to prevent the plaintiff from discovering he was injured." Id. at 462 (citing Fahrner v. SW Mfg., Inc., 48 S.W.3d 141, 146 (Tenn. 2001)). Fraudulent concealment tolls the statute of limitation when "the plaintiff could not have reasonably known he was injured." Id. Put simply, "the tolling period equals the amount of time the defendant misled the plaintiff" because "[a]ny other result would reward the defendant for his deception." Id.

Here, the Court declines to apply either tolling doctrine because the Plaintiff has not adequately pled facts alleging that Defendant engaged in misconduct or took steps that induced Plaintiff to put off filing suit. Furthermore, Plaintiff's delay cannot be attributed to his lack of diligence.

Plaintiff acknowledges the statute of limitations has run on his claims but asserts the statute of limitations should be tolled because he believes facts regarding the status of Ms. Brown's Will are still being withheld. Plaintiff, however, offers no plausible reason why he did not discover his alleged cause of action before October 2, 2019, when he filed this action in the District Court for South Carolina. Plaintiff's claim that Defendant "concealed" information is belied by the facts stated in his Complaint. Plaintiff was aware of Defendant's alleged breach of fiduciary duty as early as November 2011, and as recently as 2016.

In Plaintiff's response brief, he alleges that one of Defendant's employees "made false and misleading statements regarding the original will." Doc. No. 45 at 2. Plaintiff also states that although he is not a trained investigator, he has "worked diligently to make sense of all that has happened." Id. at 3. Plaintiff details significant facts regarding his personal investigation and

15

repeated attempts to locate the Will. See id. at 9-16. When Plaintiff gained access to Ms. Brown's conservator reports, he "spent the next five days reading every page of those conservator reports and discovered that [Ms. Brown's] first conservator had committed a fraud against her." Id. at 2. Plaintiff alleges that Defendant "kept secret from me" that Ms. Brown's original Will was in their vault, and that "this extraordinary coincidence of fiduciary failures of the bank and of her conservators suggest nothing less than a conspiracy to have the estate of [Ms. Brown] declared intestate." Id. at 5. Plaintiff explicitly states "Facts related to the concealment of the Will are still being withheld by the bank. Is this not fraudulent concealment?" Id. at 9.

Even if there are some facts still being withheld by the bank, Plaintiff admits he was made aware of the will issues in the probate case of Ms. Brown in July of 2013. Plaintiff admits he appeared before the probate judge in August of 2013 to retain counsel and read every page of the conservator reports for Ms. Brown. In July of 2014, Plaintiff admits he had "proof" in the form of a "Record of Testamentary Papers" that Defendant had possession of the original Will and had been paid a fee to guard and serve as executor of Ms. Brown's estate. See Doc. No. 1-1 at 2. That fact, coupled with the missing will, was certainly one of the times when Plaintiff's cause of action accrued. Plaintiff is deemed to have discovered the right of action if he is aware of facts sufficient to put a reasonable person on notice that he has suffered an injury as a result of wrongful conduct. Carvell, 900 S.W.2d at 29.

In February of 2015, Plaintiff admits he had e-mail evidence from a Suntrust vice president and deposition testimony of the an employee in charge of the will vault, that contradicted his proof, as they alleged that Defendant only had a copy of the Will. Doc. No. 1-1 at 3. At that point, again, Plaintiff knew or reasonably should have known he had a cause of action for his alleged breach of fiduciary duty. Plaintiff lost his will contest in May of 2015, but

16

Defendant obtained and delivered the original Will in June of 2015. Id. at 5. For a third time, Plaintiff was on notice of his alleged cause of action.

To prove fraudulent concealment, Plaintiff must prove that Defendant took affirmative action to conceal the cause of action and that Plaintiff could not have discovered the cause of action despite exercising reasonable diligence. Vance v. Schulder, 547 S.W.2d 927, 930 (Tenn. 1977). Plaintiff allegedly spent $176,000 litigating the issues with the lost will in the Probate case, but failed to assert any causes of action against Defendant. Plaintiff is unable to show that he "could not have discovered the cause of action despite exercising reasonable diligence" because his Complaint demonstrates he discovered his alleged injury several times. Given everything Plaintiff knew, and when he knew it, Plaintiff has not offered any plausible reason as to why he waited until October 2, 2019 to bring this action against Defendant.

Based on the facts read in the light most favorable to Plaintiff, Defendant has made "false and misleading statements" that led Plaintiff to believe that Defendant did not have in its possession Ms. Brown's original Will, but Plaintiff, through the exercise of due diligence, was able to uncover facts that put him on reasonable notice of any potential breach of fiduciary duty claims he might have against Defendant. Therefore, no tolling doctrine applies.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's motion to dismiss, Doc. No. 42, is **GRANTED.**

Signed: November 23, 2020

Max O. Cogburn Jr
United States District Judge